Our case today is United States v. Coddington, 18-1470. Thank you, Your Honor, and may it please the Court, Counsel Robert Fishman, on behalf of the appellant. As the Court is aware, the notice of appeal was filed in this case by Mr. Coddington shortly thereafter he passed away. In response to that event, I filed, I think it was a one-and-a-half-page motion seeking to have this appeal dismissed. The motions panel, the government objected, the motions panel directed that the merits panel address that question, and here we are. The dispositive issue in this case, in my view, is really rather straightforward and both settled and conceded. For more than 25 years, the rule in this circuit has been that death pending direct review of a criminal conviction requires that an appeal be dismissed and be remanded to the district court with instructions to vacate the judgment and dismiss the indictment. That rule is known as abatement ab initio. It is the rule applied in every federal circuit court. So the first point to be made in this case, I believe, is that this panel is bound to apply that law. Except, I'm sorry, you finish. And there are only two conditions to application of the rule. Direct appeal is pending and the appellant dies while that happens. There is the separate question, not whether the rule should apply under these circumstances, what are the practical consequences of applying the rule when you have an order of restitution? And I suspect, Judge Backtrack, that's what you were asking. And is that an open question? That is an open question under a Tenth Circuit precedent. There used to be a split of authority. There still are a couple circuits that say we abate convictions in these circumstances, but not restitution orders. And the law has changed, I think, considerably on that question since the United States Supreme Court's decision in Nelson v. Colorado. And in this case, the government has conceded, look, if you apply the abatement doctrine, the restitution order can't stand under Nelson. I think that's correct, and I think it resolves this case. I don't want to get you off track, but in terms of precedent, one of the things that I have come to the impression is that although there are a litany of Supreme Court, Tenth Circuit, at least one published as Tenth Circuit opinion, talking about abatement ab initio, I've yet to see any court address the argument that the government is making with regard to substitution of the estate. None of these cases have addressed, as I understand it, the argument that the court should use its discretion and allow substitution of the estate for the decedent and allow the appeal to go forward. So why isn't that at least within our discretion to do? Yeah, I think that is, I think your observation is both wrong and irrelevant. It is irrelevant because the law in this circuit is not, we apply the doctrine when the defendant dies pending direct appeal, you know, unless you can figure out some way around it. Well, I think my way around it is Judge Baldock said that in that case, the single published opinion, that the decedent's family wanted the conviction to go, the appeal to go forward. And he said, well, the law provides a more salutary answer. I don't think he cited Rule 43A or talked about an argument about substitution of the estate. So I don't know that, maybe I'm wrong, but I don't know that that opinion. Well, we cited, I think, three or four cases, not from this circuit, from other circuits. Dealing with 43A? No, dealing with the fact that you don't need to drag the estate into one of these cases in order to apply the abatement doctrine and dismiss an appeal. And there are cases, in fact, a state of Parsons is the obvious one, where estates do come, a lawyer for the estate comes forward and files one of these motions. And I think you're right in saying the courts don't really drill down as to whether that's appropriate, whether that's the correct party. But it is true that in the half dozen at least cases decided in this circuit, none of them indicate that the estate is the entity bringing the motion or that the estate is required to do so. And we know- I thought the estate of Parsons applied the doctrine, ab initio. It did. OK. It did. But it doesn't say, and the only reason we're doing that is because the estate has come forward. It doesn't get into the merits of this. And we know there are all sorts of civil claims that can be sold, assigned to other litigants that pursue them. I don't think that holds true with criminal convictions. I don't think a third party in a state, a stranger technically to a criminal case, can assert the individual rights to a fair trial, to due process, to be free from unreasonable search and seizure. And that's really, I think, what substituting the estate would do in these cases. And it is, as many of the circuits say, it's just entertaining an imaginary appeal. The defendant is no longer here, is no longer a litigant. Which means who's your client now? It's not a bad question. And in part, it depends on what this court rules. I am here, I think, asserting the remedy that is operative under this court's law under these circumstances. I can tell the court, I've never met Mr. Cotlington. I did not consult with him about the strategy being adopted in this case. So what am I to do? To say nothing? Or to say, this is the law, as Judge And so it's the position I'm taking. I was appointed by the court to represent Mr. Cotlington. No, I'm not questioning the propriety of that. It just raises an interesting question. You know, I usually start these arguments identifying who I represent by name. And it's not an accident that I didn't do it this time. Could I just, I was interested in reading the sentencing transcript here. Once the conversation turned to restitution, it started out with the court making reference to the parties talking about funding money. And then it went from there. And it seemed like maybe there wasn't anything there for restitution. But because, of course, at that point, Mr. Cotlington was alive. Who knows, maybe something might happen where there could be some assets. But now he's not. And my question is, whether any remaining assets. And whether the record tells us anything about that. Because it raises a question, in my mind, about moodness. Absolutely. And that's the argument we make under the Wright case from the Second Circuit. And the Pogue case from the D.C. Circuit. Both courts said, we're not going to stick our neck out and make some unprecedented exception to the abatement doctrine to preserve a restitution order that is meaningless. Because there are no assets. Well, if there are no assets, do we even need to talk about the doctrine? Is there anything, what are we arguing about here? I agree. I mean, our argument is abatement applies. And the case is over. And the fact that there's a restitution order, period, does not make any difference. The government's response, the first response, is sort of an equitable one. Well, gee, that's awfully unfair, because it enriches the estate at the expense of the victims. And our response is, that could be an argument in maybe some other case. It's not an argument in this case. There are no assets. Is it clear in the record below that there are no assets? I think it's absolutely clear from the sentencing hearing, when the judge says, aren't we talking about funny money here? Because no one's going to get paid. Nobody's getting money from Coddington. Nobody's getting money from Irwin. Nobody's getting money from Columbia. And the prosecution does not say, we disagree. We think there's assets to be had. What the prosecution says is, I agree, but you know, maybe Mr. Coddington buys a lotto ticket and wins it big. And then there's money to be had. And the response to that is, well, it didn't happen. And unfortunately, he's not buying any lottery tickets. There is no money to be had for the estate or for the victims. So I agree entirely with your observation, Judge Matheson. You apply the doctrine as it's always been applied. And even if there was some equitable argument to be made to draw some sort of distinction in the context of restitution orders, this is not the case. Let me see if you can help me on one other. It's a different question. So we have the Davis precedent. It's been in place for some time. But one thing that's happened since then was the enactment of this statute in 2016, 18 U.S.C. 3613, which seems to suggest that Mr. Coddington's estate would pay restitution that was ordered. It doesn't really talk about pending appeal, death pending appeal. Why doesn't that statute change things, open the door to us considering the government's position? So the government raised that question in the motions practice. So I knew that was coming. And I addressed it in our opening brief. And I made five points about why 3613 doesn't change the result here. The first is that it's clear on the face of it that that statute assumes a valid restitution order. And it says what happens with a valid restitution order upon the death of the person directed to pay restitution. Now, the fact is, when you abate a conviction, you don't have a valid restitution order, as the authority we discuss acknowledges under the Mandatory Victim Restitution Act. In the absence of a valid conviction, you have no valid order of restitution. That's the first point. The second point is the statute, the Justice for All Act, doesn't say anything about the abatement doctrine at all. It doesn't talk about what happens to restitution orders in these circumstances. And if Congress wanted to try to carve out an exception, it could have done that, but it didn't. And we offer a language like that. The other point is that at the time the Justice for All Act was enacted, there was a split in circuit authority. There still is, as to whether restitution orders survive abatement. And if Congress was siding with the minority of circuits who hold that restitution orders do survive, the law is pretty clear. It has to do so explicitly. We assume Congress legislates with awareness of what judicial constructions of the law is, and they said nothing about the subject here. And the fifth point is because of Nelson, if the JFA really did try to carve out an exception here, you don't have a valid conviction, but restitution survives anyway, you have a pretty serious constitutional problem. And that's reason enough to avoid what I give a reading that doesn't raise constitutional concerns. Those are the five responses. They've been made twice now, and there has been no response to any of them by the government in this court. So I can expound on those if you'd like, but as it stands, I'll just rest on the papers on all those arguments. None of them have been rebutted. So that's my answer to why the statute doesn't work any difference in the law. And I would add, no court has ever adopted the reading of the JFA that the government is proposing here. No court has ever applied it as a way of tweaking the abatement doctrine. And furthermore, there's not a single case or court that the government can point to that adopts this sort of two-tiered approach to abatement. What they're proposing is, sure, abatement under Davis applies in all criminal cases where the defendant dies pending direct review, except if there's a restitution order, in which case it doesn't apply at all. There's no, no court has ever done that. And there's no reason this court should be the first for any number of reasons, not least of which Davis tells you what the resolution of this case is. And I think this panel is bound by that authority. And if there's no additional questions, I'll reserve my minute. Sure. Thank you. May it please the court. I'm Marissa Miller, and I represent the United States. I want to talk about money and mootness a little bit later. But first, I want to frame the case in a way that I think will help the court understand how the government is viewing the interaction of this doctrine and the JFA 36 U.S.C. 3613B. Abatement ab initio is a federal common law doctrine. It is a policy that courts created to fill in a gap in the law where there were no statutes. But this policy was created decades before mandatory restitution and society's recognition of victims' rights. And it has only been used by this court when the government doesn't object and there are few, if any, real-world consequences to vacating a defendant's conviction. As a result, today's case presents a question of first impression in this circuit, which is, is abatement also the correct policy when the judgment against a defendant includes a restitution order? Or put another way, should the court expand the doctrine of abatement so that it extends to the circumstances of this case? The answer is no, for the reason that the plaintext of a federal statute must trump federal common law. 18 U.S.C. 3613B states that in the event of the death of a person ordered to pay restitution, that person's estate will be held responsible for any unpaid amount. Could I just ask you though, if you're going to talk about 3613, how do you address 36A, which says that when sentencing a defendant convicted of an offense? And my understanding is that under Davis, we'd have to abate the conviction. So if the defendant is not convicted, 3613B really doesn't come into play. Yes, your honor. So to respond to that, I think that that argument only makes sense if the court has already concluded that under Davis, it must vacate the conviction. But our argument here is that the court not only doesn't have to, but given 3613B, that would represent an expansion of federal common law in a way that would directly conflict with a federal statute. So our argument is that the conviction itself must stand. As a result, that language in the Mandatory Victims Restitution Act. And do you agree with counsel that if the conviction falls, restitution falls with it? You've taken that position. I believe I conceded that in my brief. All right. But so in passing this law, Congress made it clear that after a convicted defendant has been ordered to make restitution, his death won't excuse him from the obligation to make his victims whole. Statute doesn't contain any exceptions. So by arguing for his conviction to be abated, what the defendant is actually asking the court to do is expand a common law doctrine into an area where Congress has already spoken and in a way that would directly conflict with 18 U.S.C. 3613B. Well, would you agree that, maybe not, that 3613B and the abatement ab initio doctrine both can be reconciled? I mean, you have an argument that the Justice for All Reauthorization Act somehow changed the complexion, but they certainly can be reconciled because the abatement ab initio doctrine and the substance of it is never within the text of 3613B. Yes, Your Honor. I would agree with that. But in the sense that, I guess, there are two ways of looking at this case and, I guess, the way the abatement doctrine interacts with the statute. And one is the defendant's position, which is that abatement is this broad rule that always applies when the defendant dies while his direct appeal is pending. And as a result, we're going to work around the language in 3613B so that we can keep following this federal common law rule. Our position is that it's a federal common law rule that was created to deal with a very specific problem. Ultimately, abatement is a policy judgment that was made by courts in a pre-restitution era to deal with cases where, when you vacate the conviction, the real world consequences are minimal. So our argument is that abatement as a doctrine doesn't necessarily extend to this area where there's restitution orders. And so, yes, you could reconcile that language. But another way of seeing it is it's an expansion into an area where Congress has already told us restitution is mandatory and mandatory restitution has to survive the defendant's death. Okay. Let me ask you about sort of maybe a broader philosophical issue that our court struggles with intermittently. And that is, when we have a precedent, we addressed this last year at a magistrate judge's ability to take guilty pleas. And writing for the majority, Chief Judge Timkovich said that, well, we have a precedent and we have a new argument. In that case, it was the adoption of Rule 59 of the Federal Rules of Criminal Procedure. But unless that new provision, in that case, Rule 59, was so clear and pollucent that it somehow makes it absolutely clear, much like a supervening Supreme Court opinion, that we should repudiate our prior precedent, we're going to go ahead and comply and follow our prior precedent. And doesn't that same philosophical principle apply here? If 3613B can be reconciled, which you've conceded with the abatement ab initio doctrine, in the absence of any case adopting your interpretation of 3613B, shouldn't we say that what Congress did in 3613B is not so clear and pollucent that we should abandon or find some exception to the abatement ab initio doctrine when restitution is included in the judgment? Sure. So I guess several responses to that. The first point I just want to make is that there aren't any other cases interpreting 3613B in the restitution and abatement context. And that's not because it's a bad argument. It's because it's the first time the government has ever presented this argument. It's a new statute. And obviously, defendants don't die on direct appeal a lot. So I wouldn't necessarily interpret the lack of precedent from other circuits as an indication that this argument is weak. That said, I think that that, and I'm saying this without having read Garcia, my apologies. The way I would interpret that is an extension, or at least relying on the canon and the idea that we don't assume that Congress is abrogating a common law doctrine unless it does so explicitly. And again, I think it's the same response, which is we're not saying that the statute overrules or abrogates this doctrine. We're saying that this is a balance of interests. It's a policy judgment that the court made a long time ago under very different circumstances. And so applying it to this context is not just the natural logical extension of that precedent. It's a very different question. And I don't think the court has to reconcile that statute with a rule that arguably doesn't apply and certainly has never been applied by this court or the Supreme Court in this specific context. Well, the Congress wouldn't have to overrule the common law doctrine. It could take account of it. And it didn't take account of it on its face. And so going to Judge Backberg's point, why shouldn't that tell us something? That it didn't take into account the abatement. Well, I mean, I think there's two ways of looking at it. One is why didn't Congress make it clear that abatement wouldn't apply in this situation? And I think probably the response to that is that this is an obscure doctrine that doesn't come up a lot. And I'm really not sure Congress had that in mind. But the other response is, if Congress was so concerned about preserving abatement, then why didn't they put language in there that says, but the restitution order goes away when the defendant dies during direct appeal? There's no requirement for a final conviction anywhere in this statute. There is, you know, 3613b only talks about the entry of judgment. But the judgment is not final when it is taken on direct appeal. It is not a final judgment. So there is no final judgment of restitution. But the statute doesn't say final judgment. It only says entry of judgment. And even this provision doesn't even refer to the entry of judgment, which I recognize is, you know... That's a stretch. I mean, if the district court enters any judgment, the whole point, the reason I got job security is that somebody can appeal. And when they appeal, that judgment can go away. It doesn't exist until in a final form, until we ruled on it, if somebody appeals. I think, again, that just my argument to that would be that you can interpret it two ways, which is that Congress could have provided for the abatement doctrine, or Congress could have provided in a way to overrule the abatement doctrine. And it didn't do either of those directly conflict with an expansion of this common law doctrine. Doesn't the existence, long-time existence of Davis... Doesn't the argument you're making now fit more in an en banc context? This panel is hemmed in by Davis. I would argue that there are three key differences between this case and Davis that Davis doesn't control the outcome here. The first one is that the government never objected to vacating the conviction in that case, which means the court wasn't even thinking about this issue, wasn't presented with the arguments on this. The second is that there's no indication there was a restitution order in Davis. And that's because of the very important fact that Davis was decided in 1992, and that's before the Mandatory Victims Restitution Act and before these changes to 3613b. So the Davis court was very much not thinking about compensating the victims of the defendant and helping them get back the money that they lost. Davis was just thinking, this is an easy way to resolve an appeal that would be pointless. And of course, in Davis, hearing the appeal would be pointless. If you affirm the conviction, he's still not going to jail. It did recognize the doctrine. It did recognize the abatement of an issue of doctrine. Yes, and of course, and it cites Durham and Davis. But again, the same arguments can be made with respect to those Supreme Court cases. I mean, in addition to being quite short and opaque, also dealing with a very different question presented, they're dealing with what happens to the cert position. So the Supreme Court never even directly addressed what's happening at the Federal Court of Appeals level. But Durham and Dove, again, decided in a context where the government's not objecting, the court's not hearing any arguments about the merits of this doctrine. And this was Durham and Dove were in the 70s. The Victims Rights Movement, Mandatory Restitution, all of that doesn't happen until the 90s and later. Let me just, why shouldn't we be reluctant to wade into any of this if there aren't any assets? Sure. So I guess I would disagree with that premise. And thank you for helping me remember that. Is that the record? By the way, I don't know about the premise. I'm asking, are there any assets? So the record really doesn't tell us very much, except what both parties are going off of and what that sentencing discussion was about was Mr. Connington's own self-reported assets in pre-sentence investigative report. And I can give the court the citation to that. Well, why shouldn't we just remand for a determination of jurisdictional fact? If there's an issue of mootness here, why should we wade into all of these arguments you're making when there's really not much point in doing so if there are no assets? So I think the difficult problem with that approach is that if this court tries to decide this case on the basis of whether or not there are any assets in the estate- Well, I don't know that we can. The question is, should we get the record clarified? It's a fact question. We're not in a fact-finding situation, but the district court is and came pretty, you know, the funny money reference, shouldn't that give us some pause? The pre-sentence investigative report actually does list Mr. Connington as having more assets than liabilities. So yes, he's not going to be able to pay the full $18 million restitution order amount, but there is money. We also are going off of a half page of self-reporting, so we really don't know what assets are out there until we investigate. But the point I want to make is that even with remanding, by coming to that decision, what this court is saying is the question of whether or not there are assets in the estate actually matters when you're deciding whether or not the doctrine of abatement of an issue applies. No, it really doesn't. If I understand it correctly, it's a threshold issue. The doctrine is a separate track of decision making. If there are no assets, the case is just moved. I mean, it's like any other case, it's moved, irrespective of whether the defendant is dead or not. I mean, if the thing that is at issue here, if what we're fighting about is restitution, although there is merits briefing, and one would have to think about what the significance of that is, but if what we're fighting about is restitution and that's it, then if there are no assets, there's nothing to give relief about, right? Well, so I mean, I think Moodness really hasn't been briefed, but I guess the two points I would make is with Moodness, there could be the special name, but I would also say, and again, having really not briefed Moodness, the fact that courts have been confronting this question for decades and still no one has concluded that these cases actually are constitutionally mooted, I think is indicative of the fact that we're not really sure that if there's no money and the defendant can't be punished, the case is still moved. And particularly since you're arguing that the conviction itself should stand, right? Yes, Your Honor. And if you're arguing that the conviction itself should stand, even if there are no assets, then we have to decide what to do with that, right? Yes, Your Honor. Okay. Can I ask one question? Yes. So it may dovetail into two. So the first question is, the only reason you care about the conviction is in order for the restitution order to remain valid, right? I mean, we also would like the conviction to remain on the books because, again, there was a three-week trial and a jury found this man guilty beyond a reasonable doubt. And we think that the victims deserve some recognition from society that they were victims of a federal crime. They didn't just make that investment. That's fair. And the reason I ask you that is Moodness, as everybody knows, has two dimensions, constitutional and prudential. And if prudentially, the only significance of keeping the conviction intact is so the restitution order remains intact, then that implicates not only constitutional moodness, but prudential moodness. But that's just an aside. My second question. Last question. Even if it's not prudentially mood, even if it's not constitutionally mood, isn't the absence of any information and the little information we have, as my colleagues noted, is the reference to the funding money and the fact that he may win the case, the absence of any information in the record other than he might be able to satisfy a special assessment fee, isn't that a reason that we ought not exercise our discretion in Rule 43A to substitute the estate? So I would say if we're going to focus on what the record says, I would direct the court to Volume 3, pages 342 to 343. That is Mr. Coddington reporting his assets and liabilities, and he comes out in the black, not in the red. So that is the concrete information we have. Thank you. Could you spot him an additional minute? You don't need to take it, Mr. Fishman, but you'll have it if you want. I'll try not to, but it never seems to work that way. A couple points. The question of that needs to be clarified. The interest of the governments, seeing that this conviction stands because there was a guilty verdict and the victim should have that, I don't know, have that thing, that's true in every abatement case. I mean, that's no reason to abandon the doctrine wholesale. It, by definition, would apply in every case. I do want to disabuse the court of this notion that you would be expanding the abatement doctrine beyond some sort of ancient scope that it used to have before this movement towards victims' rights. As we explain at length, all sorts of federal circuit courts have wrestled with the question of the Mandatory Victim Restitution Act and its relationship to the abatement doctrine, and almost all of them have said, in the absence of a valid conviction, there is no statutory authority to order restitution, and therefore, restitutions have to fall by the wayside. Now, the government seems to be saying, it's this obscure doctrine Congress is out there legislating in this area and has no idea what's going on. It's been the subject of Supreme Court cases. It's been the subject of litigation in every single federal circuit court. It's been the subject of a half a dozen cases by this court. If Congress wanted to change the law, it should have done so explicitly. What was your answer in your briefing on mootness to the point that she wants to maintain the conviction? She being the government counsel. The fact that there would be no assets wouldn't really change the fact that there would be a viable issue as it relates to the conviction, right? Sure, and I didn't address that because that was not argued, that mootness point. I argued the assets. The argument that the case shouldn't be moot because we want the conviction to stand is just another way of saying you should abandon the abatement doctrine because somebody's been convicted. That conviction cannot be reviewed on appeal, but for the sake of the victims, let's keep it because we like that idea. That's just antithetical to Davis. It's antithetical to the entire doctrine and the notion of finality of criminal judgments. All right. Thank you, Mr. Fishman. Case is submitted. Thank you, counsel.